# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KEVIN WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO.  14-2288** |
| **N. BURL CAIN, WARDEN** | **SECTION  "G"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Kevin Williams ("Williams"), is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On October 23, 2008, Williams was indicted by a St. Tammany Parish Grand Jury for the second degree murder of Ileana Lyons.[3]  He entered a plea of not guilty to the charge on November 18, 2008.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

[3] St. Rec. Vol. 1 of 6, Indictment, 10/23/08; Grand Jury Return, 10/23/08.

[4] St. Rec. Vol. 1 of 6, Minute Entry, 11/18/08.

The record reflects that, in the summer of 2008, Ileana Lyons lived in a rental house in Covington, Lousiana.[5]  On or about July 4, 2008, a mail delivery person noticed an odor coming from the house.  He knocked on the door, but no one answered.  Later, on July 10, 2008, Lyons's half-naked body was found wedged between the toilet and the vanity in the bathroom of her rental house.  The body was in a state of advanced decomposition, and the cause of death was determined to be blunt force trauma to the head with facial bone fractures.  The autopsy revealed that Lyons had suffered multiple fractures to her face, consistent with being beaten with a hard object such as a crowbar.  Her bloodstained shorts were located near the body.

During that summer, April Marie Nixon was involved in a relationship with Williams.  Around the time of Lyons's death, Williams told Nixon, "I did something that I have to get out of Covington, because I did something I wasn't supposed to do.  And I feel like the walls is closing in on me."  Williams eventually told Nixon he had killed a lady and threatened her if she revealed what he told her.  He showed her a shirt with dried bloodstains, and told her he had worn the shirt during the murder.  She also saw him driving a car later identified as Lyons's car.

At the end of June, 2008, Williams approached another woman he knew, Juanita Magee, with a checkbook.  He wrote out a check for $100 made out to Magee, and she assisted him in cashing the check at a Quick Stop market.

On July 2, 2008, Williams told his coworker, Broderick Garrett, that he needed to get a check cashed.  Williams told Garrett that he had to make the check out to Garrett because he did not have

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal. *State v. Williams*, 57 So.3d 610 (La. App. 1st Cir. 2011) (Table); *State v. Williams*, No. 2010-KA-1392, 2011 WL 2178767, at *1-*2 (La. App. 1st Cir. Feb. 11, 2011); St. Rec. Vol. 4 of 6, 1st Cir. Opinion, 2010-KA-1392, pp. 2-4, 2/11/11.

identification or driver's license.  Williams drove Garrett to the bank in Lyons's car.  The bank employee, however, refused to cash the check citing insufficient funds in the account.  Williams would not tell Garrett why he could not cash the check and refused to push the issue.

Charlene Dilworth Pierre also knew Williams during the summer of 2008.  She saw Williams driving Lyons's car over the Fourth of July weekend, but he claimed that the car belonged to his girlfriend.  On or about July 11, 2008, Williams asked Pierre if she knew anyone who wanted to buy a microwave or a computer, because his "break-in spot has been discovered."

Williams was questioned by police during their investigation.  He initially denied having Lyons's checks and car.  He later claimed that he purchased the checks on the street and conceded that he did ride in Lyons's car.  When Williams was momentarily left alone in the interrogation room, he stated aloud, "Why I murder that bitch."  Williams later told an inmate at the St. Tammany Parish Jail that he used a crowbar to kill Lyons.  In addition, hair recovered from the bloodstained shorts found near Lyons's body matched Williams's DNA profile.

Williams was tried before a jury on January 25 through 27, 2010, and was found guilty as charged.[6]  On March 1, 2010, the Trial Court denied Williams's multiple post-trial motions, including his motions for a new trial and for post-verdict judgment of acquittal.[7]  After waiver of legal delays, the Trial Court sentenced Williams to life in prison at hard labor without benefit of

---

[6]St. Rec. Vol. 1 of 6, Trial Minutes, 1/25/10; Trial Minutes, 1/26/10; Trial Minutes, 1/27/10; Jury Verdict, 1/27/10; St. Rec. Vol. 2 of 6, Trial Transcript, 1/25/10; Trial Transcript, 1/26/10; St. Rec. Vol. 3 of 6, Trial Transcript (continued), 1/26/10; Trial Transcript, 1/27/10.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 3/1/10; Motion for New Trial, 2/2/10; Motion for Post-Verdict Judgment of Acquittal, 2/2/10; Trial Court Order, 2/9/10; Motion for New Trial, 2/12/10; St. Rec. Vol. 3 of 6, Sentencing Transcript, 3/1/10.

parole, probation or suspension of sentence.[8]  The Trial Court also denied his motion to reconsider the sentence.[9]

On direct appeal to the Louisiana First Circuit Court of Appeal, Williams's appointed counsel argued that the state trial court erred in denying the motion to suppress the confession and erred when it allowed the State to play an enhanced recording of the confession to the jury without a hearing pursuant to *Daubert v. Merill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1983).[10]  The Circuit Court denied Williams's request to file a pro se supplemental brief as untimely.[11]

On February 11, 2011, the Louisiana First Circuit affirmed Williams's conviction and sentence finding no merit to the first issue and that the second issue was procedurally barred from appellate review for lack of a contemporaneous objection, citing La. Code Crim. P. art. 841.[12]  The Circuit Court also denied Williams's request for rehearing on March 28, 2011.[13]

Williams's conviction and sentence became final thirty (30) days later, on Wednesday, April 27, 2011, because he did not seek timely review in the Louisiana Supreme Court.  *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (finding appeal is final when the state defendant does not timely

---

[8]St. Rec. Vol. 1 of 6, Sentencing Minutes, 3/1/10; St. Rec. Vol. 3 of 6, Sentencing Transcript, 3/1/10.

[9]St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 3/9/11; Trial Court Order, 3/11/10.

[10]St. Rec. Vol. 6 of 6, Appeal Brief, 2010-KA-1392, 8/17/10.

[11]St. Rec. Vol. 6 of 6, 1st Cir. Order, 2010-KA-1392, 1/26/11.

[12]*Williams*, 57 So.3d at 610; *Williams*, 2011 WL 2178767, at *1; St. Rec. Vol. 4 of 6, 1st Cir. Opinion, 2010-KA-1392, 2/11/11.

[13]St. Rec. Vol. 6 of 6, 1st Cir. Order, 2010-KA-1392, 3/28/11; Application for Rehearing, 2010-KA-1392, 2/25/11.

proceed to the next available step in an appeal process) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)).

Thereafter, on May 11, 2011, Williams signed and submitted an untimely[14] request for relief in the form of a letter to the clerk of the Louisiana Supreme Court, which was filed by the court as a writ application on May 18, 2011.[15]  His later-filed formal writ application was denied by the Louisiana Supreme Court on March 9, 2012, without stated reasons.[16]

Over one year later, on March 21, 2013, Williams's signed and submitted an application for post-conviction relief to the Trial Court in which he asserted four grounds of ineffective assistance of counsel:[17] (1) counsel presented hearsay testimony from Detective Robert Blount and erroneously mentioned a crowbar during his questioning of the deputy coroner; (2) counsel failed to object to the prosecutor's indirect reference to Williams's failure to testify during closing arguments; (3) counsel failed to challenge the sufficiency of the evidence to support a guilty verdict;  (4) counsel did not prepare for trial where he failed to articulate the reasonable doubt theory to the jury, never advanced a theory of innocence or new exculpatory evidence, failed to object to perjured testimony from state witnesses, and did not complete discovery.

---

[14]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's decision to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[15]St. Rec. Vol. 5 of 6, La. S. Ct. Writ Application, 11-KH-1028, 5/18/11 (dated 5/11/11); Letter from Central Staff, 5/18/11; St. Rec. Vol. 4 of 6, La. S. Ct. Letter, 2011-KH-1028, 5/18/11.

[16]*State v. Williams*, 84 So.3d 542 (La. 2012); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2011-KH-1028, 3/9/12.

[17]St. Rec. Vol. 4 of 6, Application for Post-Conviction Relief, 3/27/13 (dated 3/21/13).

After receiving a response from the State, the Trial Court denied relief on June 10, 2013, finding no merit in the claims raised under the standards set for in *Strickland v. Washington*, 466 U.S. 668 (1984).[18] The Louisiana First Circuit denied Williams's related application without stated reasons on November 4, 2013.[19]

The Louisiana Supreme Court also denied his subsequent writ application on July 31, 2014, for seeking untimely post-conviction relief, citing La. Code Crim. P. art. 930.8, *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995), and *State ex rel. Hall v. State*, 871 So.2d 1071 (La. 1999).[20]

## II.  <u>Federal Habeas Petition</u>

On October 3, 2014, the Clerk of this Court filed Williams's petition for federal habeas corpus relief in which he raised the following grounds for relief:[21] (1) the state courts erred when the trial court allowed the State to play an enhanced recording of the confession to the jury without a hearing pursuant to *Daubert v. Merill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1983) and the appellate court denied relief finding the issue not preserved for appeal; (2) the state courts erred in denying the motion to suppress the confession; (3) counsel was ineffective when he presented hearsay testimony from Detective Robert Blount and erroneously mentioned a crowbar during his questioning of the deputy coroner; (4) counsel was ineffective when he failed to object to the

---

[18]St. Rec. Vol. 4 of 6, Trial Court Order and Reasons for Judgment, 6/10/13; State's Answer, 5/6/13.

[19]St. Rec. Vol. 5 of 6, 1st Cir. Order, 2013-KW-1232, 11/4/13; St. Rec. Vol. 6 of 6, 1st Cir. Writ Application, 2013-KW-1232, 7/12/13 (dated 7/8/13).

[20]*State ex rel. Williams v. State*, 147 So.3d 173 (La. 2014); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2013-KH-2851, 7/31/14; La. S. Ct. Writ Application, 13-KH-2851, 12/9/13 (dated 12/3/13).

[21]Rec. Doc. No. 1.

prosecutor's indirect reference to Williams's failure to testify during closing arguments; (5) counsel was ineffective when he failed to challenge the sufficiency of the evidence to support a guilty verdict; (6) counsel was ineffective when he did not prepare for trial where he failed to articulate the reasonable doubt theory to the jury, never advanced a theory of innocence or new exculpatory evidence, failed to object to perjured testimony from state witnesses, and did not complete discovery.

The State filed an answer and memorandum in opposition to the petition arguing that Williams did not timely file his federal petition.[22]  The State also argues that state review of the claims was not exhausted. In the alternative, the State argues that four of the claims are in procedural default and the remaining arguments are without merit.

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[23] applies to this petition, which is deemed filed in this Court by Williams under the federal mailbox rule on October 3, 2014.[24]  The threshold questions on habeas review under the

---

[22]Rec. Doc. Nos. 10, 11.

[23]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The Clerk of Court filed Williams's federal habeas petition on October 3, 2014, when it was received.  Williams dated his signature on the petition that same day, October 3, 2014.  Further, the official stamp of the prison's Legal Programs Department reflects that Williams delivered the pleading to that office on October 3, 2014, for electronic submission to this Court, which was done that day.

amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  As indicated above, the State suggests that each of these defenses applies to Williams petition.  Nevertheless, for the following reasons, the record confirms the State's argument that Williams's petition should be dismissed as untimely filed.

## IV.    <u>Statute of Limitations</u>

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[25]  *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).  As calculated above, Williams's conviction was final on April 27, 2011, when he did not seek timely review of his direct appeal.  Pursuant to § 2244, Williams had one year from that date, or until April 26, 2012, to timely file a federal application for habeas corpus relief which he did not do.  Thus, literal application of

---

[25]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

the statute would bar Williams's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

A.    **Statutory Tolling**

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999) (Table). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.

*Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (finding that a motion to withdraw a guilty plea is "other collateral review").  However, requests for document and transcript copies are not other collateral review for purposes of the tolling calculation.  *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (finding that a motion for transcript copies is not "other collateral review" for tolling purposes); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (stating delay in receipt of transcript not required to file the application, does not warrant equitable tolling); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (finding petitioner should file application and then continue to gather transcripts); *Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000). Further, a "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

  In the instant case, the AEDPA one-year filing period began to run on April 28, 2011, the day after his conviction became final.  The filing period continued to run uninterrupted for one year until April 26, 2012, when it expired.  Williams had no properly filed state application for post-conviction or other collateral review, as defined above, pending during that time.

The Court recognizes that Williams submitted for filing an untimely writ application to the Louisiana Supreme Court during the relevant period. As noted above, however, under La. S. Ct. Rule X § 5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within thirty (30) days of the issuance of the judgment under review or denial of a timely filed application for rehearing. *Accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009). Of course, for prisoners, the appropriate mailbox rule is also applied. *Causey*, 450 F.3d at 604-05.

As outlined above, the Louisiana First Circuit denied Williams's application for rehearing on direct appeal on March 28, 2011. Williams signed and submitted his letter/writ application to the Louisiana Supreme Court forty-three (43) days later, on May 11, 2011. This clearly was not within the 30-day time limit allowed under La. S. Ct. Rule X § 5.

A writ application which fails to comply with La. S. Ct. Rule X § 5 is <u>not</u> "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines. *Butler*, 533 F.3d at 318-319; *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (finding failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (same). The United States Supreme Court has made clear that "[w]hen a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (quoting *Carey*, 536 U.S. at 226). Williams's 2011 Louisiana Supreme Court writ application did not interrupt or toll the AEDPA filing period, which expired on April 26, 2012, as calculated above.

In addition, the Court notes that Williams also allowed another full year to lapse between the denial of that untimely Louisiana Supreme Court writ application on March 9, 2012, and his submission of his application for post-conviction relief to the state trial court. As outlined above, Williams signed and submitted that application on March 21, 2013. This delay allowed another full year to pass without a properly filed state court application for post-conviction or other collateral review pending. Without any such pleading pending in a state court, Williams has no basis for tolling of the one-year AEDPA filing period. The pleadings submitted to the state courts after expiration of the AEDPA filing period also do not provide him any tolling benefits. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

For these reasons, Williams's federal petition deemed filed on October 3, 2014, was not timely filed in this Court under the AEDPA.

### B.    No Equitable Tolling

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Williams has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation. The record does not contain

13

any of the extraordinary circumstances previously recognized by the precedent cited above that would warrant equitable tolling.  The record instead reflects simply that petitioner did not timely pursue federal habeas review.  There is no basis for equitable tolling in this case.[26]

For all of the foregoing reasons, Williams's federal petition filed on October 3, 2014, which was almost two and one-half years after the one-year AEDPA filing period expired on April 26, 2012, is untimely filed and should be dismissed for that reason.

## V.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Williams's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

_____

[26]The Court recognizes for the benefit of a reviewing court that the United States Supreme Court's holdings in *Martinez v. Ryan*, __ U.S. __, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911 (2013), do not provide a basis for review of this untimely filed federal petition.  In *Martinez*, the Court held that a state imposed "'procedural default' will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"  *Trevino*, 133 S. Ct. at 1912 (quoting *Martinez*, 132 S. Ct. at 1320) (emphasis added).  The bar to review in this case arises from Williams's failure to meet the federal limitations deadline under the AEDPA.  The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition.  *See, Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun.13, 2014) (Order adopting Report).  These cases also do not constitute new rules of constitutional law made retroactive on collateral review that would start a new one-year filing period under the AEDPA.  *See, In re Paredes*, No. 14-51160, 2014 WL 5420533, at *6 (5th Cir. Oct. 25, 2014) ("... the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  For these reasons, neither *Martinez* nor *Trevino* provide petitioner a basis for relief.

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[27]

New Orleans, Louisiana, this 30th day of March, 2015.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[27]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.