## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KEVIN WILLIAMS**                                    **CIVIL ACTION**

**VERSUS**                                            **NO.  14-2288**

**N. BURL CAIN, WARDEN**                              **SECTION  "G"(4)**

### REPORT AND RECOMMENDATION

On November 13, 2015, this matter was referred back to the undersigned United States Magistrate Judge to prepare a Report and Recommendation addressing the claims of petitioner, Kevin Williams ("Williams"), apparently pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

I.      **Factual Background**[2]

Williams, a convicted inmate, was indicated on October 23, 2008, by a St. Tammany Parish Grand Jury for the second degree murder of Ileana Lyons.[3]  He entered a plea of not guilty to the charge on November 18, 2008.[4]

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]The factual and procedural history of Williams's state criminal proceedings was outlined in full in the Court's prior Report.  Rec. Doc. No. 12.  It is repeated here in full and supplemented as necessary.

[3]St. Rec. Vol. 1 of 6, Indictment, 10/23/08; Grand Jury Return, 10/23/08.

[4]St. Rec. Vol. 1 of 6, Minute Entry, 11/18/08.

The record reflects that, in the summer of 2008, Ileana Lyons lived in a rental house in Covington, Louisiana.[5]  On or about July 4, 2008, a mail delivery person noticed an odor coming from the house.  He knocked on the door, but no one answered.  Later, on July 10, 2008, Lyons's half-naked body was found wedged between the toilet and the vanity in the bathroom of her rental house.  The body was in a state of advanced decomposition, and the cause of death was determined to be blunt force trauma to the head with facial bone fractures.  The autopsy revealed that Lyons had suffered multiple fractures to her face, consistent with being beaten with a hard object such as a crowbar.  Her bloodstained shorts were located near the body.

During that summer, April Marie Nixon was involved in a relationship with Williams.  Around the time of Lyons's death, Williams told Nixon, "I did something that I have to get out of Covington, because I did something I wasn't supposed to do.  And I feel like the walls is closing in on me."  Williams eventually told Nixon he had killed a lady and threatened her if she revealed what he told her.  He showed her a shirt with dried bloodstains, and told her he had worn the shirt during the murder.  She also saw him driving a car later identified as Lyons's car.

At the end of June, 2008, Williams approached another woman he knew, Juanita Magee, with a checkbook.  He wrote out a check for $100 made out to Magee, and she assisted him in cashing the check at a Quick Stop market.

On July 2, 2008, Williams told his coworker, Broderick Garrett, that he needed to get a check cashed.  Williams told Garrett that he had to make the check out to Garrett because he did not have identification or driver's license.  Williams drove Garrett to the bank in Lyons's car.  The bank

---

[5]The facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal. *State v. Williams*, 57 So.3d 610 (La. App. 1st Cir. 2011) (Table); *State v. Williams*, No. 2010-KA-1392, 2011 WL 2178767, at *1-*2 (La. App. 1st Cir. Feb. 11, 2011); St. Rec. Vol. 4 of 6, 1st Cir. Opinion, 2010-KA-1392, pp. 2-4, 2/11/11.

employee, however, refused to cash the check citing insufficient funds in the account. Williams would not tell Garrett why he could not cash the check and refused to push the issue.

Charlene Dilworth Pierre also knew Williams during the summer of 2008. She saw Williams driving Lyons's car over the Fourth of July weekend, but he claimed that the car belonged to his girlfriend. On or about July 11, 2008, Williams asked Pierre if she knew anyone who wanted to buy a microwave or a computer, because his "break-in spot has been discovered."

Williams was questioned by police during their investigation. He initially denied having Lyons's checks and car. He later claimed that he purchased the checks on the street and conceded that he did ride in Lyons's car. When Williams was momentarily left alone in the interrogation room, he stated aloud, "Why I murder that bitch." Williams later told an inmate at the St. Tammany Parish Jail that he used a crowbar to kill Lyons. In addition, hair recovered from the bloodstained shorts found near Lyons's body matched Williams's DNA profile.

Williams was tried before a jury on January 25 through 27, 2010, and found guilty as charged.[6] On March 1, 2010, the Trial Court denied Williams's post-trial motions, including his motions for a new trial and for post-verdict judgment of acquittal.[7] After waiver of legal delays, the

---

[6] St. Rec. Vol. 1 of 6, Trial Minutes, 1/25/10; Trial Minutes, 1/26/10; Trial Minutes, 1/27/10; Jury Verdict, 1/27/10; St. Rec. Vol. 2 of 6, Trial Transcript, 1/25/10; Trial Transcript, 1/26/10; St. Rec. Vol. 3 of 6, Trial Transcript (continued), 1/26/10; Trial Transcript, 1/27/10.

[7] St. Rec. Vol. 1 of 6, Sentencing Minutes, 3/1/10; Motion for New Trial, 2/2/10; Motion for Post-Verdict Judgment of Acquittal, 2/2/10; Trial Court Order, 2/9/10; Motion for New Trial, 2/12/10; St. Rec. Vol. 3 of 6, Sentencing Transcript, 3/1/10.

Trial Court sentenced Williams to life in prison at hard labor without benefit of parole, probation or suspension of sentence.[8]  The Trial Court also denied his motion to reconsider the sentence.[9]

On direct appeal to the Louisiana First Circuit Court of Appeal, Williams's appointed counsel argued that the Trial Court erred in denying the motion to suppress the confession and when it allowed the State to play an enhanced recording of the confession to the jury without a hearing pursuant to *Daubert v. Merill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1983).[10]  The Circuit Court denied Williams's request to file a pro se supplemental brief as untimely.[11]

On February 11, 2011, the Louisiana First Circuit affirmed Williams's conviction finding no merit to the first issue and that the second issue was not preserved for review under La. Code Crim. P. art. 841.[12]  The Court also denied his request for rehearing on March 28, 2011.[13]

The District Judge has accepted Williams's assertion that his conviction became final on June 7, 2012, which was ninety (90) days after the Louisiana Supreme Court denied without reasons Williams's subsequent writ application on March 9, 2012.[14]  (Rec. Doc. No. 15).

---

[8]St. Rec. Vol. 1 of 6, Sentencing Minutes, 3/1/10; St. Rec. Vol. 3 of 6, Sentencing Transcript, 3/1/10.

[9]St. Rec. Vol. 1 of 6, Motion to Reconsider Sentence, 3/9/11; Trial Court Order, 3/11/10.

[10]St. Rec. Vol. 6 of 6, Appeal Brief, 2010-KA-1392, 8/17/10.

[11]St. Rec. Vol. 6 of 6, 1st Cir. Order, 2010-KA-1392, 1/26/11.

[12]*Williams*, 57 So.3d at 610; *Williams*, 2011 WL 2178767, at *1; St. Rec. Vol. 4 of 6, 1st Cir. Opinion, 2010-KA-1392, 2/11/11.

[13]St. Rec. Vol. 6 of 6, 1st Cir. Order, 2010-KA-1392, 3/28/11; Rehearing Application, 2010-KA-1392, 2/25/11.

[14]*State v. Williams*, 84 So.3d 542 (La. 2012); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2011-KH-1028, 3/9/12; La. S. Ct. Writ Application, 11-KH-1028, 5/18/11 (dated 5/11/11); Letter from Central Staff, 5/18/11; St. Rec. Vol. 4 of 6, La. S. Ct. Letter, 2011-KH-1028, 5/18/11.

On March 21, 2013, Williams's signed and submitted an application for post-conviction relief to the Trial Court in which he asserted four grounds of ineffective assistance of counsel:[15] (1) counsel presented hearsay testimony from Detective Robert Blount and erroneously mentioned a crowbar during his questioning of the deputy coroner; (2) counsel failed to object to the prosecutor's indirect reference to Williams's failure to testify during closing arguments; (3) counsel failed to challenge the sufficiency of the evidence to support a guilty verdict; and (4) counsel did not prepare for trial where he failed to articulate the reasonable doubt theory to the jury, never advanced a theory of innocence or new exculpatory evidence, failed to object to perjured testimony from state witnesses, and did not complete discovery.

After receiving a response from the State, the Trial Court denied relief on June 10, 2013, finding no merit to the claims raised under the standards set for in *Strickland v. Washington*, 466 U.S. 668 (1984).[16]  The Louisiana First Circuit denied Williams's related application without stated reasons on November 4, 2013.[17]

The Louisiana Supreme Court also denied his subsequent writ application on July 31, 2014, for seeking untimely post-conviction relief, citing La. Code Crim. P. art. 930.8, *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995), and *State ex rel. Hall v. State*, 871 So.2d 1071 (La. 1999).[18]

---

[15]St. Rec. Vol. 4 of 6, Application for Post-Conviction Relief, 3/27/13 (dated 3/21/13).

[16]St. Rec. Vol. 4 of 6, Trial Court Order and Reasons for Judgment, 6/10/13; State's Answer, 5/6/13.

[17]St. Rec. Vol. 5 of 6, 1st Cir. Order, 2013-KW-1232, 11/4/13; St. Rec. Vol. 6 of 6, 1st Cir. Writ Application, 2013-KW-1232, 7/12/13 (dated 7/8/13).

[18]*State ex rel. Williams v. State*, 147 So.3d 173 (La. 2014); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2013-KH-2851, 7/31/14; La. S. Ct. Writ Application, 13-KH-2851, 12/9/13 (dated 12/3/13).

## II.     Federal Habeas Petition

### A.     Claims Asserted

On October 3, 2014, the Clerk of this Court filed Williams's petition for federal habeas corpus relief in which he raised the following grounds for relief:[19] (1) the state courts erred when the trial court allowed the State to play an enhanced recording of the confession to the jury without a hearing pursuant to *Daubert v. Merill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1983) and the appellate court denied relief finding the issue not preserved for appeal; (2) the state courts erred in denying the motion to suppress the confession when petitioner was not advised he was being questioned about the murder; (3) counsel was ineffective when he presented hearsay testimony from Detective Robert Blount and erroneously mentioned a crowbar during his questioning of the deputy coroner; (4) counsel was ineffective when he failed to object to the prosecutor's indirect reference to Williams's failure to testify during closing arguments; (5) counsel was ineffective when he failed to challenge the sufficiency of the evidence to support a guilty verdict; and (6) counsel was ineffective when he did not prepare for trial where he failed to articulate the reasonable doubt theory to the jury, never advanced a theory of innocence or new exculpatory evidence, failed to object to perjured testimony from state witnesses, and did not complete discovery.

---

[19]Rec. Doc. No. 1.  The District Court's prior Order did not include or recognize two of the petitioner's six claims asserted in the petition.  *See* Rec. Doc. No. 15, p. 3 (compare Rec. Doc. No. 1, pp. 5, 6, 7, 8, 9, 11, 23, 25, 29, 32, 36, 39, 46).  The Court, nevertheless, will proceed to consider all of the claims urged by Williams.

**B.**    **State's Response and Defenses Resolved**

The State filed an answer and memorandum in opposition to the petition arguing that Williams did not timely file his federal petition.[20]  The State also argued that Williams did not complete state review of the claims asserted.  In the alternative, the State argued that four of the claims were in procedural default and the remaining arguments were without merit.

The District Court already has rejected the State's limitations defense.[21]  The State, however, also asserted that Williams failed to properly exhaust his first claim challenging the enhanced confession, because he did not timely present the issue in his post-appeal writ application to the Louisiana Supreme Court.  The District Court's prior Order renders moot the State's exhaustion defense as to the failure to properly complete exhaustion of the first claim.

However, the State also contends that Williams's first claim, if timely and exhausted, is in procedural default because it was rejected by the state courts as procedurally barred under La. Code Crim. P. art. 841.  The Court will address this defense later in this report.

The State next asserted that Williams failed to properly exhaust state court review of his second claim, challenging the denial of the motion to suppress his statements based on a new ground.  Williams for the first time in this federal court argues that he did not waive his rights to make statements with regard to the murder investigation.  The State is correct in its conclusion that Williams has not exhausted this issue in the state courts.  Nevertheless, because this claim is without merit, I will address it without requiring full exhaustion. 28 U.S.C. § 2254(b)(2).

---

[20]Rec. Doc. Nos. 10, 11.

[21]Rec. Doc. No. 15.

In addition, the State argued that Williams claims three through six were in procedural default having been procedurally barred as untimely on state post-conviction review under La. Code Crim. P. art. 930.8. In its prior Order, the District Court resolved that the state application for post-conviction relief apparently was filed within two years of finality of Williams's conviction, thereby tacitly finding that the Art. 930.8 bar was misapplied.[22] A bar that is misapplied and without basis in the record is inadequate to bar review by a federal habeas court. *See Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. Jul. 28, 1999) (Berrigan, J.) (stating Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. Jul. 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). For that reason, the undersigned need not further address the application of the procedural bar and will proceed to the substance of claims three through six.

### III.   Procedural Default (Claim No. 1)

Williams first claim, challenging the introduction or playing of the video of his confession at trial without a *Daubert* hearing, was barred from review on appeal by the Louisiana First Circuit for lack of a contemporaneous objection as required under La. Code Crim. P. art. 841. The Court held that the objection made by counsel regarding possible "distortion" did not assert or preserve a *Daubert* argument. This was the last reasoned opinion in the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

---

[22]Rec. Doc. No. 15, p. 9.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. Federal review is barred even if the state court alternatively address the merits. *See Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Harris*, 489 U.S. at 264 n.10). The Court will consider whether the bar to review relied upon by the Louisiana courts prohibits consideration of Williams's first claim on federal habeas corpus review.

### A.   **Independent and Adequate State Grounds**

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338. In addition, it also is well settled that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." *Fisher*, 169 F.3d at 300. For the reasons set forth above, the Court here needs only to consider the state courts' procedural basis for denial of relief.

The question of the adequacy of a state procedural bar is itself a federal question. *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, __, 131 S. Ct. 1120, 1127-28 (2011); *Glover*, 128 F.3d at 902. A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard*, 558 U.S. at 60 (citations omitted) .

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) and *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)) (citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, federal courts need not honor that bar. *See e.g.*, *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 & n.10 (N.D. Tex. May 30, 2001); *Johnson*, 1999 WL 562728, at *4; *Poree*, 1999 WL 518843, at *4. However, it is <u>not</u> within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such a foundation and basis does exist, as it does in this case, the bar must stand.

In this case, the Louisiana First Circuit relied upon La. Code Crim. P. art. 841(A) to support its finding that Williams's *Daubert* claim was not preserved for appellate review because he failed to lodge the required contemporaneous objections at trial or before. Under La. Code Crim. P. art. 841(A) "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

The state courts' ruling, therefore, were based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for appellate review. *See Fisher*, 169 F.3d at 300. It is well settled that this type of "contemporaneous objection" rule is an "independent and adequate" state procedural ground which bars federal habeas corpus review. *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977). The ruling, therefore, was independent of federal law and based strictly on state procedural requirements. *See Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The failure to preserve a claim under La. Code Crim. P. art. 841 has also been repeatedly recognized as an adequate state ground which bars review by the federal courts in a habeas corpus proceeding.  *See*, *Toney v. Cain*, 24 F.3d 240, 1994WL243453, at *2 (5th Cir. May 20, 1994) (Table, Text in Westlaw); *Proctor v. Butler*, 831 F.2d 1251, 1253 (5th Cir. 1987); *Riggins v. Butler*, 705 F. Supp. 1205, 1208 (E.D. La. 1989); *Marshall v. Cain*, No. 04-219, 2006 WL 2414073, at *1 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation); *accord*, *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002) (citing *Wainwright*, 433 U.S. at 87-88 (Louisiana's contemporaneous objection rule is an adequate state bar to federal review of a defaulted claims)). The procedural bar under La. Code Crim. P. art. 841 is adequate to bar federal habeas review of Williams's first claim.

For the foregoing reasons, the bar imposed to review of Williams's first claim by the Louisiana courts is supported by the record and are adequate to foreclose review by this federal court.  Because the Louisiana courts' decisions rested on independent and adequate state rules of procedural default, this court will not review Williams's first claim unless he has established one of the following exceptions.

### B.     Cause and Prejudice

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *see Engle v. Isaac*, 456 U.S. 107, 128-29 & n.33 (1982))

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486. Petitioner has not asserted, and the Court's review of the record does not support a finding, that any factor external to the defense prevented him from raising the claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

Should Williams attempt later to argue to a reviewing Court that his trial counsel was ineffective in failing to make the necessary objections to preserve this claim, such an argument would be unavailing. Williams has not exhausted state court review of any such claim and therefore can not rely on such a claim as cause to excuse the bar. *See Edwards v. Carpenter*, 529 U.S. 446, 452-54 (2000) (requiring exhaustion of a claim of ineffective assistance of counsel as cause for procedural default).

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Williams's defaulted claim is therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (finding habeas review precluded when petitioner neglected to allege actual prejudice

13

and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[23]

Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477-78 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

## C.    **Fundamental Miscarriage of Justice**

Williams may avoid this procedural bar only when a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 & n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When the petitioner has not adequately asserted his actual innocence, the procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

---

[23]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument *sua sponte* but may do so in its discretion. *Id.*

Williams does not present any claim and the record contains nothing to suggest or establish his actual innocence.  His claim instead addresses alleged procedural and evidentiary errors and not his actual innocence.  He fails to present any evidence or argument of the kind of actual innocence that would excuse the procedural default.  He, therefore, has failed to overcome the procedural bar to his claims, and his claims should be dismissed with prejudice.

## IV.   Standards of a Merits Review of the Remaining Claims

### A.   Standard under the AEDPA

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court.  *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is

that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### B.       Standard for Claims With No State Court Merits Review

The AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). To the extent petitioner's claims were not considered by (or exhausted in) the state appellate courts, this Court's utilizes the pre-AEDPA *de novo* standards of review. *Id.*, at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also*, *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

Therefore, the Court will consider *de novo* Williams remaining five claims, one of which was not exhausted and four of which were not addressed on the merits in the state courts. The Court recognizes and has utilized the appropriate standard for its review of each of petitioner's claims even if the standard is not specifically reiterated in the following sections of the report.

V.    **Analysis**

A.    **Denial of the Motion to Suppress the Confession (Claim No. 2)**

Williams asserts that the state courts erred in denying the motion to suppress his confession. He claims that he was not told that he was being questioned about the murder, and had he known, he would have sought the assistance of counsel.  He concedes that he was read his rights and waived those rights, but that decision was based on his belief that he was only being questioned about the stolen checks.  He also suggests that the inculpatory statement was used in violation of his right to privacy, because he thought he was alone when he made it.

The State argues in its opposition that Williams has pointed to no United States Supreme Court precedent to support his claim that he had an expectation of privacy.  The State understandably did not address the unexhausted argument regarding Williams's knowledge that he would be questioned about the murder.

As previously discussed and asserted by the State, Williams raises the issue of his knowledge of the murder charge for the first time in his federal petition and did not present it to the state courts. Williams presented only the privacy right argument to the state courts in his pretrial motion to suppress and on direct appeal.

With regard to the latter argument, the Louisiana First Circuit on direct appeal held that Williams knew he was suspected of a crime and had been formally advised of his constitutional rights, which he freely waived.  In addition, he had no reasonable expectation of privacy while he, armed with this knowledge, was being interrogated in a police station with the recording device on the table in front of him.  This was the last reasoned state court opinion on the issue.  *See Ylst*, 501 U.S. at 802.

The admissibility of a confession is a mixed question of law and fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985); *ShisInday v. Quarterman*, 511 F.3d 514, 522 (5th Cir. 2007) (citing *Miller*, 474 U.S. at 112). A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1); *Barnes v. Johnson*, 160 F.3d 218, 222 (5th Cir. 1998). In doing so, a federal habeas court must afford a presumption of correctness to state courts' findings of fact if they are fairly supported by the record. *Miller*, 474 U.S. at 117.

The Supreme Court recognizes two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *Soffar v. Cockrell*, 300 F.3d 588, 592 (5th Cir. 2002). First, waiver of the right must be voluntary and not the product of intimidation, coercion or deception. *Moran*, 475 U.S. at 421. Second, the waiver or relinquishment must be made with full awareness of the nature of the right being waived. *Id*. In making these inquiries, the court must consider the "totality of all the surrounding circumstances – both the characteristics of the accused and the details of the interrogation." *Schneckloth v. Bustamonte*, 412 U.S. 218, 224 (1973).

In assessing voluntariness, "trickery or deceit is only prohibited to the extent it deprives the suspect 'of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Soffar*, 300 F.3d at 596 (quoting *Moran*, 475 U.S. at 424). Therefore, a finding of coercive police conduct is a necessary prerequisite to a conclusion that a confession was involuntary, and the defendant must establish a causal link between the coercive

conduct and the confession.  *Carter v. Johnson*, 131 F.3d 452, 462 (5th Cir. 1997) (citing *Colorado v. Connelly*, 479 U.S. 157, 163-67 (1986)).

Determining whether officers engaged in coercive tactics to elicit a confession is a question of fact, and the state court's factual findings are entitled to deference when supported by the record. *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993); *Self v. Collins*, 973 F.2d 1198, 1204 (5th Cir. 1992); *see also*, *Miller*, 474 U.S. at 112 (noting that subsidiary questions such as whether the police engaged in coercive tactics are afforded the presumption of correctness).  Thus, federal judges are to respect credibility determinations made by the state court trier of fact.  *Pemberton*, 991 F.2d at 1225 (citing *Sumner v. Mata*, 455 U.S. 591, 597 (1982)).  However, if the underlying facts as determined by the state court indicate the presence of some coercive tactic, the impact that factor had on the voluntariness of the confession is a matter for independent federal determination and is ultimately a legal determination.  *Miller*, 474 U.S. at 117; *ShisInday*, 511 F.3d at 522.

Even if the confession is deemed involuntary under these standards, the Supreme Court has held that the admission of an involuntary confession is a trial error subject to harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991).  Under these standards, to grant federal habeas relief, the trial error must have a substantial and injurious effect or influence in determining the verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Therefore, even if this court were to find that petitioner's Fifth Amendment rights were violated, the Court would also consider whether use of the confession at trial was harmless in determining the verdict.  *Hopkins v. Cockrell*, 325 F.3d 579, 583 (5th Cir. 2003).

In Williams's case, as required by the United States Supreme Court in *Jackson v. Denno*, 378 U.S. 368 (1964), the state trial court conducted a full evidentiary hearing on the motion to suppress

the confession and the admissibility of the inculpatory statement recorded by the officers.[24]  At the hearing, it was made clear by the state trial court and counsel that the motion to suppress was based on Williams's privacy argument.  That is, Williams argued that he did not know he was being recorded when he made the inculpatory statement, "Why I killed that bitch," when the officers stepped out of the room.[25]

The state trial court received testimony from the officers and other evidence, including the waiver of rights form.  The Trial Court concluded that Williams spontaneously and voluntarily made the inculpatory statement aloud and outside of the presence of the officers.  The Court opined that the statement under these circumstances would have been admissible even if he had not already been read and waived his rights.  The Court further noted that the statement was "not compelled" and "was not part of the interrogation or questioning because the officer left the room."[26]  The Court also relied on the fact that Williams was in a police station and had been read his rights and questioned in connection with the murder investigation.  The Court therefore resolved that Williams did not have a reasonable expectation of privacy in that setting, especially with the recording device sitting in front of him on the table.[27]  Citing supporting state case law, the Court denied the motion to suppress the statement.

When the matter was urged on direct appeal, it again was based on the theory that Williams's privacy rights were violated, because he was not told that he was being recorded when the officers

---

[24]St. Rec. Vol. 1 of 6, Minute Entry, 1/21/10; Motion to Suppress, 12/11/09; Motion to Suppress, 1/19/10; Hearing Transcript, 1/21/10; St. Rec. Vol. 2 of 6, Hearing Transcript (continued), 1/21/10; Hearing Transcript, 1/22/10.

[25]St. Rec. Vol. 2 of 6, Hearing Transcript, p. 3, 1/22/10.

[26]*Id*., p. 3.

[27]*Id*., p. 4.

left the room.  The Louisiana First Circuit entered its own findings based upon the evidence and testimony from the suppression hearing and trial.  The Court emphasized, as did the Trial Court, that Williams knew he was suspected of a crime, was advised of his constitutional rights, and waived those rights before being interrogated at the police station.  The Court also noted that the recorder was not hidden and instead was directly in front of Williams on the table.  The Court concluded that it was not reasonable for Williams to have an expectation of privacy under these circumstances.

On federal habeas review, this court must presume that the factual determinations made by the state courts were correct, including the finding that Williams was properly read his rights and waived those rights before he was questioned.  The state trial court also made one additional finding that is compelling to this Court.  The state trial court concluded "[t]he <u>fact</u> is Mr. Williams had been *Mirandized* and read his rights in connection with a <u>murder</u> investigation."[28]  The Court later repeated that Williams knew he was "under interrogation for a <u>murder</u> . . ."[29]  At no time did Williams or his counsel suggest to the state courts or in the motions to suppress that Williams did not know he was being investigated for murder when he waived his constitutional rights.  Even now, Williams has not pointed to anything in the record to support his assertion that he was misinformed when he waived his rights or deceived into waiving those rights because he was not aware that he was being questioned about the murder.  The state trial courts conclusion that Williams knew he was the subject of a murder investigation remains unrefuted and is entitled to deference.

In addition, it is without doubt that, at the very least, Williams knew he killed the victim when he agreed to speak with police about her checks and her car.  According to the testimony of

---

[28]*Id*., p. 3, l. 27-29.

[29]*Id*., p. 4, l. 11-12.

the officers, he was advised that he could stop the discussion at anytime, which he did not do. At no time did Williams ask for counsel or request that the interview stop. Knowing that had killed Ms. Lyons, he waived his rights and subjected himself to questioning about his connection to the victim and her checks and other belongings. As the proverbial seat got hotter, Williams made the unsolicited, inculpatory utterance, "Why I killed that bitch," when he was left alone in the interrogation room with the recording device right in front of him.[30]

As the United States Supreme Court has recognized, "the expectations of privacy of an individual taken into police custody 'necessarily [are] of a diminished scope.'" *Maryland v. King*, __ U.S. __, 133 S. Ct. 1958, 1978 (2013) (citation omitted). Just as concluded by the state courts, it was not reasonable for Williams to expect a right to privacy in his statement made while in a police interrogation room where he knew he was being questioned, and recorded, about his criminal activity. *See United States v. Swift*, 623 F.3d 618, 623 (8th Cir. 2010).

Williams has not established that the denial of relief on the privacy issue was contrary to, or an unreasonable application of, Supreme Court law. Similarly, Williams has failed to establish that he was unaware when he waived his rights that he could be questioned about the murder he had committed. Williams has not established a basis to find that there was unconstitutional deceit or coercion by the police which led to his voluntary and inculpatory statement. Williams is not entitled to relief on this issue.

### B.   Effective Assistance of Counsel (Claim Nos. 3, 4, 5, and  6)

Williams alleges that he received ineffective assistance of counsel during the preparation for and during trial. As discussed previously, the state courts did not address this issue when it was

---

[30]*Williams*, 2011 WL 2178767, at *4; St. Rec. Vol. 4 of 6, 1st Cir. Opinion, 2010-KA-1392, p. 7, 2/11/11.

raised on post-conviction, where the Louisiana Supreme Court ultimately denied relief as untimely under La. Code Crim. P. art. 930.8 which the District Court determined may have been misapplied, leaving these claims for *de novo* review.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 697. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).

"[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 697 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at 112.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105.  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard.  *Cullen*, 563 U.S. at 190.

### 1.   **Hearsay Testimony**

Williams alleges that his counsel failed to object to the hearsay testimony of Detective Robert Blount about inmate, Andrew Wetzel, who advised the detective that Williams used a crowbar to injure the victim.  He claims that counsel's questions to Blount effectively bolstered the State's evidence instead of challenging it.

At trial, the prosecutor first asked Detective Blount about his findings regarding the weapon used to murder the victim.[31]  Blount responded that he learned through his investigation that a crowbar was used, however, no crowbar was ever found.[32]  On cross-examination, defense counsel asked Blount about his investigation into the crowbar.[33]  Blount testified that, in an interview at the St. Tammany Parish Jail, Wetzel stated that during their conversations at the jail, Williams told him that he used the crowbar to kill the victim.  Williams complains that his counsel failed to challenge Blount's reference to Wetzel on the grounds that it was hearsay and Wetzel was not available for cross-examination.

---

[31]St. Rec. Vol. 3 of 6, Trial Transcript (continued), p. 446, 1/26/10.

[32]*Id*., at 446.

[33]*Id*., at 449.

26

Under Louisiana law, hearsay is "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. Code Ev. art. 801(C). This type of hearsay rule is based in the Confrontation Clause of the Sixth Amendment which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). While the Supreme Court in *Crawford* declined to provide a comprehensive definition of "testimonial," it did indicate that, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.*, at 68. The *Crawford* Court also indicated that testimonial statements include "pretrial statements that declarants would reasonably expect to be used prosecutorially." *Id.*, at 51.

In this case, however, Williams has not established that Blount's testimony included impermissible hearsay or otherwise violated his constitutional rights. The record reflects that Blount did not repeat Wetzel's jailhouse statement to establish its veracity. Instead, Blount repeated Wetzel's statement to demonstrate why he developed and investigated the notion that a crowbar was used to kill Lyons. An out-of-court statement is not hearsay when offered to explain why an officer conducted an investigation in a certain way. *United States v. Brown*, 560 F.3d 754, 764 (8th Cir. 2009). Arguably, Williams counsel had no reason to object to Blount's testimony on hearsay grounds.

In addition, Blount's notion about the crowbar turned out to be unprovable.  No crowbar was ever located, and the deputy coroner could not determine exactly what was used to cause Lyon's injuries.  In addition, according to Detective Blount, he never discussed the crowbar theory with the coroner.[34]

Nevertheless, the record is quite clear that Williams's trial counsel was able to use Detective Blount's reference to Wetzel in his closing argument to emphasize the unreliable nature of the State's civilian witnesses, i.e. those who were not law enforcement, including anything attributed to Wetzel.  Counsel actually mentioned in his closing argument that Wetzel had called him to confess that he (Wetzel) had hit the victim with a crowbar.  To further challenge Wetzel's credibility, defense counsel also advised the jury in his argument that Wetzel had fifteen (15) felony convictions and several pending felony charges.  Counsel also professed to the jury that Wetzel was "a man who would do or say anything to play the system" evidenced by his unsuccessful efforts to get a reduced sentence because he "cooperated" with police in Williams's case when he reported the alleged crowbar comment.

Although the record contains no specific reason why counsel chose not to object to Blount's reference to Wetzel, it is clear that counsel used that reference to enforce the defense's charge that the State's civilian witnesses simply were not credible.  Rather than object to Blount's reference to Wetzel, defense counsel used the statement as a lead-in to discredit all of the State's civilian witnesses and related evidence.

Under the *Strickland* standards, counsel's reasonable strategy decisions are not to be second-guessed.  Counsel's tactics were not unreasonable or deficient under the circumstances of the case

---

[34]*Id.*, at 449

and did not cause any apparent prejudice to the defense.  On the contrary, although not fully successful in light of Williams's inculpatory statement and the significant other incriminating evidence, counsel without doubt raised questions as to the credibility of Wetzel.  Having failed to demonstrate deficient performance by counsel, Williams's claims is without merit.

### 2. __Improper Cross-Examination__

Williams alleges that his counsel erroneously raised the crowbar issue during his cross-examination of the deputy coroner which bolstered the testimony of Blount.  Williams claim is incorrect on at least two factual points.  First, the deputy coroner, Dr. Michael Defatta, testified at trial __before__ Detective Blount.  In addition, the prosecutor, __not__ defense counsel, was the first to mention the crowbar to the deputy coroner.

The record reflects that, after Dr. Defatta detailed the horrific and severe head and face trauma still evident from the badly decomposed body of Lyons, the prosecutor asked:[35] "Are those injuries consistent with getting beaten with a crowbar?"  Dr. Defatta answered:[36]

> Certainly, the massive amount of fractures to the jaw and pallet and the teeth could be from a hard object.  In fact, I would suspect it's more from a hard object than certainly from someone's fist.

On cross-examination, Dr. Defatta merely confirmed that the trauma in this case was caused by some kind of blunt object, maybe even a crowbar.[37]  Defense counsel did not bring up anything that was not already before the jury.  Instead, defense counsel used the crowbar reference to reiterate in his closing argument, no crowbar or any other weapon was found to link Williams to the murder.

---

[35]St. Rec. Vol. 3 of 6, Trial Transcript (continued), p. 416, 1/26/10.

[36]__Id.__, at 416.

[37]__Id.__, p. 419.

Williams has not established that counsel's questioning of Dr. Defatta was deficient or in anyway acted to bolster the State's case against him. He simply has failed to prove either facet of a *Strickland* claim that would entitle him to relief on this issue.

### 3.     Objection to the State's Closing Argument

Williams claims that the prosecutor made an indirect reference to his failure to testify during closing arguments and his counsel failed to object to it. Specifically, after outlining all of the physical, DNA, and circumstantial evidence, the prosecutor made the following statement:[38]

> Circumstantial evidence, none of these facts are contradicted. You have not heard one person come in and contradict anything that I just told you. You have not heard one person come in and say: "Kevin didn't do this check, that's not the defendant. That's not the defendant." Not one piece of evidence has been presented to you indicating that any of these facts are not absolutely true.

Williams's counsel did not object to the State's argument. The question before this federal habeas court is whether the State's comments necessitated an objection such that counsel's failure to do so was ineffective and prejudicial under *Strickland*.

The Louisiana courts long have recognized that a district attorney may properly direct his argument to the lack of evidence refuting what he has proved without necessarily implicating a defendant's silence. *See Clark v. Blackburn*, 605 F.2d 163 (5th Cir. 1979) (*citing Clark v. Marullo*, 352 So.2d 223 (La. 1977)). Under La. Code Crim. P. Art. 770(3), if the prosecutor comments on the defendant's failure to testify, an admonition to the jury will prevent a mistrial. Whether such an objection is required falls on whether the prosecutor's statement was an improper comment at all.

Comments by a prosecutor on a defendant's exercising his Fifth Amendment right not to testify generally are constitutionally impermissible. *Griffin v. California*, 380 U.S. 609, 615 (1965).

_____

[38] St. Rec. Vol. 3 of 6, Trial Transcript, p. 564, 1/27/10.

To determine whether a petitioner's Fifth Amendment rights were violated, the proper inquiry is: "(1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." *United States v. Grosz*, 76 F.3d 1318, 1326 (5th Cir. 1996) (quoting *United States v. Collins*, 972 F.2d 1385, 1406 (5th Cir. 1992)) (internal quotation marks omitted).

Under the first possibility, "[t]he prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark." *Id.* Under the second possibility, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so." *Id.* (citation, emphasis, and internal quotation marks omitted). Moreover, the Fifth Amendment is not violated when the comments are made in "a fair response to a claim made by defendant or his counsel." *United States v. Robinson*, 485 U.S. 25, 32 (1988).

In this case, prosecutor's closing argument did not violate due process or Williams's Fifth Amendment rights. In his statement, the prosecutor pointed to the overwhelming evidence establishing Williams's guilt and emphasized that there was no basis for the jury to have any doubt as to what the evidence established since there was no testimony or evidence to refute it.

On the record before the Court, there is no clear showing that the prosecutor intended to comment on Williams's failure to testify or that the jury necessarily took the comments to have

required Williams to testify.  In addition, the state trial court instructed the jury at the end of trial as follows:[39]

> The defendant is not required to call any witnesses or to produce any evidence. The defendant is not required to testify.  No presumption of guilty may be raised, and no inference of any kind may be drawn from the fact that the defendant did not testify.

For these reasons, it does not appear that the prosecutor manifestly intended to refer to Williams's failure to testify, or that the jury "naturally and necessarily" took the prosecutor's argument as a comment on Williams's silence.  *See Clark*, 605 F.2d at 165.  The record therefore does not indicate that the prosecutor made an impermissible comment on Williams's silence to trigger defense counsel's duty to object.  Counsel's failure to lodge an unnecessary objection is not deficient performance or prejudicial under the *Strickland* standards.  *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998); *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994); see also, Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections.").

For the foregoing reasons, Williams has failed to establish that counsel's performance was deficient or prejudicial under the *Strickland* test.  This claim is without merit.

### 4.      Preparation for Trial and Challenge to the Evidence

Williams claims that his counsel did not investigate and prepare for trial in a manner that would allow him adequately to present a defense or advance a theory of innocence.  As a result, he claims, counsel failed to challenge the sufficiency of the evidence to support the guilty verdict.  He further contends that counsel should have hired a defense expert to refute circumstantial and presumptive evidence from the State, including the assertion that a crowbar was used as the murder

---

[39]St. Rec. Vol. 1 of 6, Jury Charges, p. 3, 1/27/10.

weapon.  He also claims that counsel should have challenged the enhanced audio tape of his confession and the other DNA evidence with independent analysis.

A reading of the record and trial transcript clearly negates Williams conclusory assertions that counsel failed to prepare or put the State's case to a legitimate challenge.  As an initial matter, the record is replete with references to the discovery proceedings conducted by defense counsel and the State.  The pretrial motions filed by counsel clearly sought complete discovery of all available information and challenged the State's efforts to introduce the enhanced video recording and the other circumstantial evidence relied on by the State at trial.

In a case like this where a petitioner alleges a failure of his counsel to investigate, he "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" (citation omitted) *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998).  In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown.  *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir.2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

In this case, Williams does not point to any inculpatory or beneficial information which further investigation would have revealed to counsel.  His generalized claims remain wholly

unsupported and conclusory which is not sufficient to establish a deficiency in counsel's performance.  *Moawad*, 143 F.3d at 948; *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Furthermore, Williams has not demonstrated that counsel failed to locate any particular evidence or witnesses for the defense.  "'Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)).  "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)).  Williams has not identified any particular witnesses nor has he suggested to what any potential witnesses may have testified.  He therefore has failed to establish a deficient performance or prejudice arising from counsel's actions.

Williams also has failed to establish a need for counsel to have called expert witnesses to trial.  Counsel's "'[f]ailure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cockrell*, 31 F. App'x 832 (5th Cir. 2002) (quoting *Williams v. Cain*, 125 F.3d 269, 278 (5th Cir. 1997)); *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) ("[a] conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates

the entire trial with obvious unfairness.").  The decision not to call an expert is a matter of trial strategy well within counsel's discretion, and is due deference by this Court.  *See Dees v. Caspiri*, 904 F.2d 452, 455 (8th Cir. 1990) (counsel's only duty is to assure that he has the expertise necessary to cross-examine the State's experts.).  In this case, Williams has not established that counsel had any reason to or need for an expert witness.

As an initial matter, Williams has failed to establish that experts could be found whose testimony and findings would have contradicted the State's evidence.  *See Tinsely v. Million*, 399 F.3d 706, 806 (6th Cir.), *cert. denied*, 546 U.S.1044 (2005) (defendant presented no evidence suggesting that "there were experts to be had" who would have contradicted State's experts). "[C]onclusory allegations that such experts exist" are insufficient to show counsel was ineffective in failing to hire a defense expert  *Id.*

Furthermore, with regard to the enhanced video, the state trial judge had already addressed the propriety of the enhanced portion of Williams's statement in pretrial proceedings and ordered that no state witness could offer an opinion on what Williams said in the video.  The state trial court correctly left that factual determination to the jury.  Under the circumstances, counsel had no need to call an expert whose actions and testimony may have further clarified the video, which would have bolstered the State's arguments to the detriment of the defense.  Counsel apparently was wise to leave the interpretation of the enhanced video for the jury and use argument to raise doubt about its content.

The same is true with the State's references to the crowbar as a possible weapon.  Based on the grossly decayed body of the victim, it was apparent that no expert, not even the deputy coroner, could positively identify what was used to kill Ms. Lyons without a "smoking-gun."  Defense

counsel left it very clear to the jury that no weapon was ever found to link Williams to the murder. The decision not to call a witness to address the crowbar or the cause of death was within the ambit of counsel's legitimate trial strategy. *See Montgomery v. Kelly*, No. 06CV150, 2007 WL 2884400, at *9 (N.D. Miss. Sep. 27, 2007) (counsel's decision not to call an expert to address the victim's cause of death is a matter of trial strategy).

Furthermore, the cross-examination by defense counsel demonstrated that he was well-prepared and held the knowledge necessary to attack the State's witnesses and evidence, including the references to the crowbar, partial DNA samples and the bloody shirt. *See Bowers v. Quarterman*, 497 F.3d 459, 472 (5th Cir. 2007) (citing *Dees*, 904 F.2d at 455). Based on the record, it also is reasonable to conclude that defense counsel strategically chose to undermine the State's evidence through his rigorous cross-examination at trial rather than risk bringing in other experts or other evidence that may have confirmed the State's findings to the detriment of Williams's defense. "Unless a crucial and important legal issue rests on the reliability of scientific evidence, . . . counsel is not constitutionally required to seek out a contradictory expert so long as the decision not to call an expert is informed and based on a strategic decision." *See Bowers v. Quarterman*, 497 F.3d 459, 472 (5th Cir. 2007). The decision not to call an expert under the circumstances of this case was well within counsel's trial strategy discretion. *Dees*, 904 F.2d at 454-55.

After thorough review of the record, it is clear that Williams can point to no particular deficiency in counsel's performance or any prejudicial effect from counsel's strategic trial choices or his challenge to the State's evidence. The fact that the defense or the defense strategy was not successful does not render counsel's performance constitutionally deficient. *See Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate

constitutionally deficient counsel."); *Strickland*, 466 U.S. at 689 ("[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). Williams has failed to establish either prong of the *Strickland* test for judging the assistance of counsel. His claim is without merit.

## VI.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Williams's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[40]

New Orleans, Louisiana, this 24th day of February, 2016.

 

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[40] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.